275 So.2d 640

**George O. TANNER**

v.

**Larry G. EASTER.**

**SC 103.**

Supreme Court of Alabama.

Feb. 22, 1973.

Rehearing Denied April 19, 1973.

209

S. P. Keith, Jr., Birmingham, for appellant.

James W. Gewin, Birmingham, for appellee.

**FAULKNER, Justice.**

George Tanner and Larry Easter were partners. In late 1965, they began as "Tan-East Investments, Limited"; then, in early 1966, they changed the partnership name to "Fairway Investments Company". The purpose of the latter, as stated in the partnership agreement, was:

"* * * [T]o explore for, produce, treat, transport either oil or gas or both, or products derived therefrom within the Continental United States; to acquire, own, hold, develop and operate mineral properties either primarily or secondarily * * *."

After 1968, the partnership did no further business. On June 16, 1971, Tanner commenced the instant action with a complaint seeking dissolution and an accounting. Easter cross-complained for similar relief. By order of September 10, 1971, the chancellor dissolved the partnership and scheduled an accounting hearing before the register in equity. The register's original report was referred back to him and amended, then sent back to the chancellor and adopted in the final decree.

The issues on appeal center around two items charged against Tanner below: a one-half interest in office furnishings, the half-interest worth $1,320; and a Texas judgment against Easter, in the amount of $17,886.40 plus interest. We will discuss these items in turn. The standard of re-view applied is that stated by Justice Harwood in Walls v. Leadway Mill, 278 Ala. 83, 176 So.2d 16, 17 (1965):

"* * * [T]he report of the Register on evidence given ore tenus before him is accorded the wright of a verdict of a jury, and if from the whole evidence it is a matter of doubt whether the finding was correct, or if different, impartial, and intelligent persons might entertain different opinions as to the matter, the findings ought not, for such reason, be disturbed."

### I. The Furnishings

It was uncontested below that a desk, a rug, wall ornaments, and other items were purchased from Town and Country Interiors, Montgomery, to furnish the partnership office in Office Park Circle, Birmingham, Alabama. Easter testified as follows:

"Q. Were those decorations the property of Fairway Investment [sic] Company?

"A. Yes.

"Q. I would like for you to state for the Court what happened to those assets of the partnership?

"A. I have no way of knowing. I was removed from office and they continued business * * *.

* * * * * *

"Q. Was Mr. Tanner generally in possession of those assets?

"MR. KEITH: We object to that.

"COURT: In possession of?

"MR. KEITH: Did he pick up the rug every night and take it home?

"MR. GEWIN: I don't know. It may be in his house now.

"MR. KEITH: Now we object to that, Judge. Very uncalled for and I resent it very much.

* * * * * *

"COURT: The proposition, I believe what Mr. Gewin was really seeking to determine was whether or not Mr. Tanner was in physical control of the premises where the assets were located.

\* \* \* \* \* \*

"WITNESS: Fairway really had no business. The records were kept in Southwest Production office but Southwest is the one that occupied and used the furniture.

"COURT: What you are saying then is that Fairway Development [sic] Company wasn't at that time active but that its records were maintained in the same office with those of Southwest.

"WITNESS: That is true.

\* \* \* \* \* \*

"Q. At the time you left the Southwest office, which had the furnishings belonging to Fairway in it, was Mr. Tanner, did he have an office in those premises too?

"A. Yes.

"Q. And was he not in charge of those premises as chairman of the Board [sic] of Southwest and as a partner in Fairway?

"A. Yes.

"Q. Have you seen those assets—do you know their whereabouts since such time as you left the premises?

"A. No.

"Q. Has Mr. Tanner ever offered to pay you for the property of Fairway that was left in those premises in his possession?

"A. No.

Tanner testified as follows:

"Q. Who got the furniture? Not an interpretation of the settlement, just what happened.

"A. Who got the furniture?

"Q. Yes. Did you?

"A. No.

"Q. Who did?

"A. I believe Southwest.

"Q. You didn't get it?

"A. No.

"Q. You don't have it now?

"A. No.

"Q. Did you ever sell it?

"A. No.

\* \* \* \* \* \*

"Q. Is it still out there?

"A. Yes.

"Q. Still being used by Southwest?

"A. And Trinidad, yes.

"Q. And are you still using that furniture yourself?

"A. Personally, no. I have no use for it.

"COURT: Let me ask you, do you still utilize it in the same offices that [you] were utilizing when Fairway was in existence?

"WITNESS: Yes, sir."

From all this, could the register reasonably conclude, as he did, that Easter was entitled to a half-interest in the adjusted value of these furnishings?

The threshold question confronting us is whether old or new Alabama partnership statutes are applicable to the case. On January 1, 1972, the Alabama Partnership Act and the Alabama Limited Partnership Act became effective, and all prior Alabama statutes regarding partnership were repealed. Section 5(4) of the New Partnership Act (Title 43, Chapter 1A, Code of Alabama 1940, Recompiled 1958) provides as follows:

" \* \* \* This chapter shall not be construed \* \* \* to affect any action

or proceedings begun or right accrued before this chapter takes effect."

Tanner's bill of complaint was filed June 16, 1971, and this is the date on which "proceedings [were] begun". It has been held by this court that the right to an accounting of partnership assets does not accrue until the decree of dissolution is entered. Steele v. Steele, 262 Ala. 353, 79 So. 2d 8 (1955); Hunter v. Parkman, 259 Ala. 596, 67 So.2d 797 (1953). The partnership between Tanner and Easter was dissolved by decree of September 10, 1971, and the rights of both partners to an accounting accrued as of that date. Hence, by either the "proceedings begun" or "rights accrued" test, this case is governed by the partnership law of Alabama prior to January 1, 1972, the date the Alabama Partnership Act went into effect, and not by the statutes in force as of the date of this opinion.

The facts below were primarily established by a number of exhibits, including a statement from Town and Country Interiors, sent to "Piedmont Petroleum, Inc.", one of several corporations controlled by Tanner and Easter with the same mailing address as Fairway. This is used by appellant to argue that Piedmont, not Fairway, owned the furniture. However, this contention cannot withstand the plain language of the old Title 43, § 32, of our Code:

"Property, whether real or personal, acquired with partnership funds, is presumed to be partnership property."

Piedmont may have been billed, but Fairway paid, at least in part. The record showed that $3,100 was transmitted to Town and Country by Fairway on the Piedmont statement. This created a presumption of ownership in Fairway to the extent of the payment. No evidence to rebut this presumption was offered by Tanner.

It is contended, however, that even if Fairway owned the furniture between 1966 and 1968, the 1969 settlement between Fairway and Southwest operated to transfer ownership to Southwest. At the time, Southwest was owed large sums by the partnership. Appellant argues:

"* * * [If] Southwest forgave Fairways [sic] its indebtedness of an amount in excess of $50,000.00, that certainly Fairways would have forgiven Southwest for the value of the furniture and fixtures which Fairways claimed in this suit."

Two principles of partnership law are decisive in framing the scope of the issue thus presented:

"All the firm property, of whatever nature or kind, should be included in the final accounting and settlement. This does not include former firm property which has been transferred to a partner, or third persons * * *." 2 Rowley on Partnership 134 (1960).

"[P]artners who have made individual use of firm property after dissolution, must account." Id. at 138.

Appellant can argue that this partnership property was "transferred to a third person", the creditor, Southwest, and that the first principle above must apply. Appellee must contend that Tanner is making "individual use" of firm property, invoking the second principle.

The undisputed evidence showed that the furniture continued in the possession of Tanner and/or Southwest, after the partnership became inactive. However, since there was no evidence of a formal transfer, and the settlement agreement is silent as to this furniture, we think the register could reasonably find that the furniture had not been transferred to the creditor, but continued as an asset of the partnership.

Our view of the furniture matter, in sum, is that there is no error in the report of the register as to this issue.

## II. The Texas Judgment

On December 20, 1971, the Texas Court of Civil Appeals, Eighth Supreme Judicial

District, affirmed a judgment in favor of Southwest Production Corp. against Easter and Tanner, "both individually and as partners". The register found that the judgment was a liability of the Fairway partnership, and that:

"* * * [T]he obligation of the Respondent [Easter] herein in the Texas case comes within the provisions of paragraph four of the final decree in case number 155–057, and that the Complainant herein has a duty, under the provisions of said decree, to save the Respondent herein harmless as to any recovery under the Texas decree."

The register relied upon paragraph four of the decree in a prior case involving substantially the same litigants. By this provision, Tanner was to release Easter:

"* * * on account of any obligation which the said George O. Tanner or the Respondent Easter may have to any of the corporations listed in Paragraph One above [including Southwest] on account of the business or operations of Fairway Investment [sic] Company."

Such a release was later signed.

Appellant advances two arguments: that the judgment was not "on account of" Fairway operations, and that the liability arose after the consent decree had been entered.

■ Although the original purchase of a gas plant, the item giving rise to the Texas litigation, was made by the predecessor Tan-East partnership, consisting of the same partners, there was ample evidence to allow the register to conclude that this was a Fairway liability. The gas plant was recorded in the name of Fairway, was carried as an asset by Fairway on its books, and installment payments were made by Fairway. The default in payments, which gave rise to the litigation, was by Fairway.

Appellant's second argument, that the liability arose after the release had been executed, cannot prevail. The release agreement, signed July 9, 1969, explicitly provides that Tanner and Southwest discharge Easter of any claim that they "have, or may hereafter have".

The findings of the register as to the Texas judgment are consistent with the law and supported by the evidence.

The decree of the chancellor is in all respects affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, and MADDOX, JJ., concur.